**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5801-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MICHAEL SALA,
a/k/a MICHAEL SALA JR.,

     Defendant-Appellant.

_____

Submitted May 28, 2020 – Decided July 12, 2021

Before Judges Fuentes and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment Nos. 17-03-0304 and 17-03-0305.

Joseph E. Krakora, Public Defender, attorney for appellant (Anderson D. Harkov, Designated Counsel, of counsel and on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (David M. Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

On March 16, 2017, a Middlesex County grand jury returned Indictment No. 17-03-00304 charging defendant Michael Sala with one count of first degree robbery, N.J.S.A. 2C:15-1(a)(2) and N.J.S.A. 2C:15-1(b), and one count of second degree robbery, N.J.S.A. 2C:15-1(a)(2) and N.J.S.A. 2C:15-1(b). On that same date, another Middlesex County grand jury returned Indictment No. 17-03-00305 charging defendant with third degree burglary, N.J.S.A. 2C:18-2(a)(1) (count one); third degree theft, N.J.S.A. 2C:20-3(a) (count two); fourth degree theft, N.J.S.A. 2C:20-3(a) (count three); and third degree receiving stolen property, N.J.S.A. 2C:20-7(a) (count four).

Defendant moved to suppress evidence seized by South Plainfield Police Officers related to the charges reflected in both indictments. South Plainfield Police Detective Lieutenant Daniel Noonan testified for the State at the evidentiary hearing. Defendant's mother and sister testified for the defense. After considering the testimony of these witnesses and the arguments of counsel, Judge Alberto Rivas denied defendant's motion to suppress the evidence. The case was thereafter reassigned to another judge.

A-5801-17

On April 9, 2018, defendant entered into an agreement with the State through which he pled guilty to count two of Indictment No. 17-03-00304, second degree robbery, and count one of Indictment No. 17-03-00305, third degree burglary. In exchange, the State agreed to dismiss the remaining counts in both indictments and recommend the court sentence defendant on the second degree robbery to a term of five years, with an eighty-five percent period of parole ineligibility and three years of parole supervision, as required under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On the third degree burglary, the State agreed to recommend the court sentence defendant to a discretionary extended term of eight years, with four years of parole ineligibility, to run concurrently with the sentence imposed on the robbery.

On June 11, 2018, the court sentenced defendant on the second degree robbery to a term of five years, subject to NERA, and imposed a concurrent term of five years on the third degree burglary conviction. In an order entered the same day, the judge denied the State's motion to sentence defendant to an extended discretionary term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a).

On appeal, defendant raises the following argument:

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF A WARRANTLESS SEARCH BECAUSE THE SEIZURE OF DEFENDANT'S CLOTHING WAS MADE WITHOUT A VALID CONSENT TO SEARCH, CONTRARY TO THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.

We disagree and affirm substantially for the reasons expressed by Judge Rivas in his oral opinion delivered from the bench on June 28, 2017. We will briefly recount the underlying facts of the robbery charge from defendant's testimony at the plea hearing to provide a factual basis for his guilty plea.

On November 10, 2016, defendant entered a QuickChek located in South Plainfield, wearing a gray hoodie and sweatpants. He approached the store clerk and asked for cigarettes. Defendant then demanded the clerk open the cash register and simulated he was holding a firearm by covering his hands with his sleeves. In response to his attorney's questions, defendant agreed that "by [his] actions and by what [he] said . . . [he] threatened the clerk with . . . immediate bodily injury on that occasion" and demanded all the money in the cash register. Defendant also admitted that on November 28, 2016, he entered a vehicle in South Plainfield without permission and took a backpack and two cell phones.

Detective Lieutenant Noonan was the State's only witness at the evidentiary hearing held before Judge Rivas. On November 28, 2016, he and other members of the detective bureau were dispatched to execute a warrant for defendant's arrest related to a vehicle burglary that occurred on Chestnut Street, approximately 300 feet from defendant's mother's residence. Noonan had also seen video footage of a robbery of the QuickChek located on Sampton Avenue, approximately one mile from the residence, and video footage of the automobile burglary that was taken by a private citizen. This private citizen identified defendant as the person who committed the burglary.

Detective Lieutenant Noonan testified that he executed the arrest warrant at defendant's residence without incident. Accompanied by Detective Anthony Pacillo, Noonan knocked on the door of the residence; defendant's sister Christine Sala[1] opened the door. The officers informed her that they had a warrant for her brother Michael's arrest. According to Noonan, as defendant

> was being taken away, Christine was like, what is going on, you know, and I said, I could try to call you later to advise you or I could come back to talk to you, but we have an arrest warrant for him for burglary. And she obviously looked concerned. So after he was transported back, myself and Detective Pacillo, maybe

---

[1] Because defendant's sister and mother have the same last name, we will refer to them by their first name. We do not intend any disrespect.

A-5801-17

a couple hours later, went back to speak to Christine Sala.

Noonan testified he returned to the Sala's residence later that day and was received by defendant's sister and his mother. He explained to them "the issue of bail" and they invited the detectives inside their home. As they walked toward the kitchen, Noonan asked them if they knew whether defendant "may be involved with some other stuff besides this vehicle burglary." Although Noonan spoke mostly with defendant's sister Christine, he was aware that defendant's mother Linda was the record owner of the house.

The prosecutor asked Noonan to describe the information he had about defendant's living arrangement.

> Well, Linda said that she just recently let him move back in because of past problems. He's been there like a month. I said, does he have, like, living quarters or anything. And she said, no, he . . . only sleeps -- I said, where does he sleep. And she said, in a recliner in the living room. And I said, where does he, like, keep his clothes and stuff. And she said she -- he keeps his clothing -- he has only a little bit of clothing, and . . . he keeps it in Christine's bedroom upstairs. He has a couple drawers that she lets him use in her dresser.
>
> . . . .
>
> And then Linda said, if you want, you could go check. And I said -- like, she said, he also keeps his, like, some clothes downstairs in the basement.

6

Q. Okay. And did she spontaneously say that to you?

A. Yeah. Yes.

Q. All right. And so did she say anything about -- you said she said you could go check?

A. Yes, she did. She said we could go check, but, you know, I wanted to make sure that she was understanding all her full rights to refuse that. And I had Detective Pacillo read thoroughly a consent-to search form. There was never any coercion. It was very nice. I couldn't tell her enough that she could deny it. But I did explain as to why, with these other things going on with these robberies, that it would be helpful to potentially rule him out. And I did say to her specifically, the scope of where we would be going, just two bedroom -- two dresser drawers in Christine's bedroom and just the basement. I asked her, like, what's the deal with the basement, does he stay down there, is it private. She says, no, we just do -- it's a basement and we have our washer and dryer down there and that was that.

Noonan told Detective Pacillo to review the consent to search form with both Linda and Christine. Noonan testified that he made clear to them that the police were just looking for a "large gray sweatshirt hoodie, gray sweatpants[,] and hiking boots." He identified for the record the Middlesex County Law Enforcement Consent-to Search form that Christine signed authorizing the detectives to search her bedroom and read the content of the entire document verbatim into the record.

After searching Christine's bedroom, Noonan testified that he asked both Linda and Christine several times whether they had any objections to him and Detective Pacillo searching the basement area; both women said they did not. The prosecutor nevertheless pressed Noonan on this issue:

> Q. Was there ever any reluctance that you saw on either part of Christine or Linda?
>
> A. No.
>
> Q. Okay. Did anybody question you, challenge you in any way during this entire time as to these searches?
>
> A. No.
>
> Q. Okay. So who led you down to the basement?
>
> A. Linda.

Detectives Noonan and Pacillo searched the basement area with Linda and Christine leading the way. The detectives found hiking boots, a gray hoodie, and sweatpants that matched the clothing worn by the assailant in the video footage of the QuickChek robber.

Linda's testimony corroborated Noonan's account of how he gained access to the residence. She testified that she was cooperative with the police and the two detectives were friendly to her. Christine's testimony was in parts more equivocal. Her answers to the following questions illustrate the point:

A-5801-17

Q. And at any point . . . did [the detectives] review a consent-to-search form with you?

A. Yes, they did.

Q. Did they read the form out loud to you?

A. No.

Q. Did they ask you to read the form to yourself?

A. Yes. But . . . they didn't give me time to.

Q. Did they ask you if you knew how to read?

A. No.

Q. Did they ask you to sign anything?

A. Yes.

Q. And what was that?

A. Consent-to-search my room.

Her testimony was nevertheless consistent with key parts of both Noonan's and her mother's testimony.

Judge Rivas delivered an oral opinion denying defendant's motion to suppress immediately after the conclusion of the witnesses' testimony. He noted it is

> the State's burden . . . to show that the consent was voluntary. An essential element of that knowledge is . . . the right to refuse consent . . . . The State has proven

9

that Ms. Sala was aware of the right to refuse. The fact that she didn't believe that she had the right to refuse, again, is of no consequence. As long as the police, law enforcement gives her the notice, what she chooses to believe or not, again, it's not of a constitutional magnitude.

And while the [c]ourt is concerned that the written consent form limited itself to the bedroom where Mr. Sala had access to two drawers, the [c]ourt finds that from the totality of the circumstances, that, one, both Christin[e] and Linda Sala had the authority to give consent, that that consent included common premises, which is the basement of the home, and consistent with that consent, the police went down and found the items that were subsequently seized from the basement that the State contend ties this defendant to the [QuickChek] robbery.

So the [c]ourt finds that the consent was voluntarily given. The [c]ourt credits the testimony of the officer. Both witnesses for the defense had some memory -- significant memory lapses with respect to crucial aspects of the incident which the [c]ourt must take into account when judging the credibility of the witnesses who's testified at the hearing. So the [c]ourt finds that the consent was given knowingly and voluntarily. There was no coercion . . . the witnesses knew of their right to refuse. And based on the totality of the circumstances, the State has proven by a preponderance of the evidence . . . that this consent was properly obtained from the occupants of the house.

As an appellate court, we review a motion to suppress employing a deferential standard of review. We are bound to uphold the factual findings underlying the trial court's decision provided they are supported by sufficient

10

credible evidence in the record. State v. Elders, 192 N.J. 224, 243 (2007). This is especially relevant when the factual findings are substantially influenced by the motion judge's opportunity to hear and see the witnesses. This vantage point gives the judge a unique "feel of the case" which lies outside a reviewing court's prerogatives. State v. Johnson, 42 N.J. 146, 161 (1964). Applying these settled principles of appellate jurisprudence, we affirm substantially for the reasons expressed by Judge Rivas.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5801-17